We're going to go to the second case, which is Mukhina v. Walmart. May it please the Court. My name is Travis Ramey. I'm the Director of the Appellate Advocacy Clinic at the University of Alabama. I want to express my gratitude to the Court for its continued support of our clinical program at the University through appointing cases like this one. And I will note that we are currently accepting cases. So one of my great privileges in my role is the chance to introduce new advocates to the Court. And so today I'd like to introduce the Court to Ms. Sarah Frances Jackson and Ms. Abby Vandiver, who will be presenting argument on behalf of Ms. Elena Mukhina. Thank you. Thank you, Mr. Ramey, and thank you for the clinic continuing to accept the appointments. So we'll start with you, Ms. Vandiver. Good afternoon, Chief Judge, Your Honors, and may it please the Court. My name is Sarah Frances Jackson, and I, along with my co-counsel, Abby Vandiver, represent Elena Mukhina, the appellant in this case. I will focus on Mukhina's religious discrimination claim, and Ms. Vandiver will focus on her hostile work environment claim. We request this Court reverse the District Court's grant of summary judgment and remand all claims for trial. First, regarding the religious discrimination claim, the District Court improperly granted summary judgment because Mukhina exhausted her administrative remedies and presented sufficient evidence for a reasonable fact finder to conclude that Walmart discriminated against her. First, Mukhina exhausted her administrative remedies because in her EEOC interview, which took place prior to the filing of her formal EEOC charge, she thoroughly described the New Year's Eve incident in which Walmart denied her a religious accommodation. Are you relying on the intake questionnaire? Is that right? Yes, Your Honor. Of course, she ended up filing a charge later, right? Yes, Your Honor. And ordinarily, if that happens, we look to the charge, not to the intake questionnaire, right? That's correct, Your Honor. However, we posit that this Court should also consider the intake questionnaire because in that interview, she thoroughly explains the religious discrimination incident and states the religious nature of her request. This Court explained in Gregory v. Georgia Department of Human Resources that the purpose of the exhaustion requirement is simply to give the EEOC the first opportunity to investigate any alleged claims of discrimination. Because Mukhina raised her religious discrimination claim in her interview, which was prior to the filing of her formal charge, the EEOC had the first opportunity to investigate her claim. Well, it's not altogether clear to me that we can consider the intake questionnaire, but even if we could, her questionnaire lists only national origin and or ethnicity as the reason for her complaint. You're saying that this should have allowed for a claim of religious discrimination? How so? Yes, Your Honor, because in her EEOC interview, she goes through the incident in which Walmart discriminated against her because of her religion by failing to provide her with a reasonable accommodation on the New Year's Eve. But she never said it was religious. She doesn't? What she identified was that she compared New Year's Eve to, quote, Christmas in America. A lot of people would argue that Christmas in America is not necessarily a particularly religious holiday, and Congress has established it by federal law, by federal statute, as a national holiday. What alerts the EEOC that that's about religion? Your Honor, the Supreme Court explained in Lynch v. Donnelly that Christmas is a religious holiday and that holidays can be both national and religious, and that Christmas is one such holiday that is both. I agree. It could be both. But it appeared that what she was really saying was that it was a national list, really, even a holiday. Your Honor, Mukina is attempting to connect the religious nature of Christmas to the religious nature of New Year's Eve. It's important to recognize that Mukina has limited English proficiency and was doing the best that she could to express the religious significance to the EEOC in this interview. Additionally, this Court also explained in Gregory that the exhaustion requirement is liberally construed and that this Court is extremely reluctant to allow procedural technicalities to bar a plaintiff's claims, especially when unrepresented by counsel, as Mukina was in this case. Therefore, the purpose of the exhaustion requirement and this Court's precedent support allowing Mukina to proceed on her claim. Moving to the merits of her religious discrimination claim, the District Court erred because it improperly applied the summary judgment standard. Regardless of the theory that is used, whether it be McDonnell Douglas convincing Mosaic, disparate treatment, or failure to accommodate, the ultimate issue is whether a reasonable fact finder could conclude that Walmart discriminated against her. In this case, the evidence shows that Mukina is a practicing Russian folk Christian, that she has been for over 50 years, that New Year's Eve and New Year's Day are extremely important holidays for Russian folk Christians, that she requested an accommodation to adhere to her religious practices. I feel like in her, in the interview, when you look at it, it says, it has many, in Russia this holiday is like Christmas, in America it has many national traditions. I celebrated the New Year's at home. I mean, if she had said, I celebrated, you know, in my church or, you know, in whatever religious group that she goes to, maybe that would have been maybe given indication that it was a religious, had some religious significance. But it specifically says it's a national tradition, which suggests it's sort of like a national holiday in Russia. She does say national tradition, but she also references beliefs and that she feels a compulsory need to celebrate this holiday. These statements indicate a religious significance that should have put Walmart on notice that she was requesting a religious accommodation. Additionally, the Supreme Court explained in EEOC versus Abercrombie and Fitch that Walmart need not have actual notice, as long as its desire to avoid providing a reasonable accommodation was a motivating factor in its decision. The fact that Mukina approached Manager Kroll and attempted to explain the religious significance of her holiday, and Manager Kroll continued to refuse to allow a reasonable accommodation, would allow a reasonable fact finder to conclude that at least it was a part of their desire, a motivating factor in denying a reasonable accommodation on this day. Regardless, at minimum, there's a genuine dispute of material fact as to whether or not Walmart was aware that New Year's Eve was a religious holiday. And the district court erred both in allowing and granting summary judgment for Walmart when a genuine dispute of material fact remained, and by drawing improper inferences in favor of Walmart by concluding that they did not know it was a religious holiday. Because Mukina sufficiently alerted Walmart to the religious nature of her request, and there's a genuine dispute of material fact, we request this court to reverse. Thank you. Thank you, Ms. Jackson.  Your Honor, may it please the court. My name is Abby Vandiver, and I will begin with the hostile work environment claim. The district court erred by improperly applying the Rule 56 standard and drawing inferences in favor of Walmart. Under either the McDonnell-Douglas or convincing mosaic frameworks, this court was clear in Tynes v. The Florida Department of Juvenile Justice that the ultimate question at summary judgment is whether Mukina created a genuine dispute of material fact about intentional discrimination. This court should reverse because she did. There are five elements to a hostile work environment claim. Only three are in dispute today. First, she created a genuine issue of material fact that the harassment was based on her protected characteristic as Russian. This court and the EEOC are clear that comments about accent, linguistic mannerism, and language can support an inference of national origin discrimination. This court went further in Garcia v. Gore to say that to a person who only speaks one language or has trouble speaking a language other than that spoken in their home, language might as well be an immutable characteristic. She's unlike the employee in Garcia because she's not bilingual. This isn't just a denial of her cultural expression or preference. This is a denial of what is an immutable characteristic to her. Yeah, but we held pretty recently in catastrophic management that preferred language is not national origin, right? Correct, Your Honor. However, there aren't just comments about accent and national origin here. Excuse me, about accent here. There are comments specifically about her national origin. Well, I mean, let's talk about how this unfolded. When she first complained to her manager, she complained that customers were being rude to her based on their inability to understand her, her inability to communicate with them. And that was it. It was just about the customers. It was just about rudeness and failing to be able to understand her. That would not suggest to Walmart anything to do with her national origin. And then when she later complains that both customers and coworkers are having difficulty with her, and she again repeats the inability to communicate, the language problem, she also references discrimination, but without, it could be discrimination based on language, and within three days they give her the transfer to the night shift, right? Your Honor, that's correct. So what are we really left with? I mean, they take prompt, immediate corrective action. How can we hold them liable for a hostile work environment in that circumstance? Your Honor, they take prompt and corrective action as late as December 4th. She's moved the next day. But under a constructive notice theory, which the standard under the EEOC guideline is that Walmart can be held liable if they knew or should have known, they should have known because this conduct was so severe. The management was aware of the conduct. Some of them participated in it. Titiana specifically participated when she spoke to another associate and asked if anyone was speaking when Mukina was trying to ask a question. They didn't use her name when they talked about her over the loudspeaker. Instead, they just called her apparel department associate, and they called everyone else by name. Also, she was a full-time employee, and this was happening from customers and associates. So it's likely that management knew it was going on and did nothing to remedy it. So even though her conversation with Coach Donald on October 20th isn't necessarily poised to explain discrimination, Walmart was on notice based on the factors in Miller v. Kenworth of Dothan. But that assumes, I guess, going back to where you started, that we essentially need to equate discrimination based on her limited ability to speak English with discrimination as to national origin. Am I correct? Kind of, yes. A little, Your Honor. But this court says in Yelling v. St. Vincent's Health Systems and Mendoza v. Borden Incorporated that the conduct is a totality of the circumstances analysis. The district court specifically erred by extrapolating all of the instances of harassment. This court should view the instances of where people commented on her actual national origin and the instance where they spoke to her in Spanish because they thought she was from Mexico with all the instances where they were rude to her, were harassing her, where they yelled at her. Doesn't that cut against, if you're saying they should have been on notice if they thought that she was from Mexico, doesn't that cut against national origin discrimination? No, Your Honor. In Guganzi v. Nike, this court says that discrimination isn't actually tied to a specific national origin. It just matters that they thought she wasn't from America and were discriminating against her for being non-American. Finally, this conduct was severe. She was verbally attacked. A customer threw merchandise on the floor. People waved their hands in her face. She had to move freight by herself. And even after she transferred, it wasn't a better environment. Yes, people praised her for her work, but she was isolated. She was taking orders from people who weren't her supervisors. She had to hide in the back of her department. And this conduct was severe such that this court should reverse the hostile work environment claim. Thank you. Okay. Thank you. Ms. Jackson, save two minutes for rebuttal. We're going to hear from Mr. Wright. Good afternoon. May it please the court? Jack Wright on behalf of Walmart. Let me start by speaking about the summary judgment standard and the notion that the district judge here accurately and correctly evaluated this case based upon the totality of circumstances in evaluating whether or not Ms. McKenna did in fact establish her burden here. And the bottom line is that she did not. And the district judge got it correct, and this court should affirm. Let me go in the same order as my opposing counsels did in describing today's issues. And I'll start with the discrimination, the religious discrimination case, the argument that they've made. I'll start off by noting that, first of all, there was a failure to exhaust administrative remedies because, as Judge Pryor, you correctly noted out, we looked to the charge. The charge here specifically did not identify a religious discrimination claim. In fact, it only had national origin as a claim, and there was no indication that that was something that was being presented. But even if we go beyond that and we look at the fact that there was a failure to exhaust administrative remedies, not only is there no reference to religion, no reference to the fact of the religious significance of New Year's Eve, and that's what's critical. You know, when Ms. McKenna brought this to Walmart's attention, it was not presented from the context of a religious issue. She made it clear that this was an important day, it was an important day, I guess, under nationality. Do you disagree that Christmas is a religious holiday? I think, Your Honor, I think it would have been... Sorry. Don't touch the microphone. Don't touch the microphone. Okay. I apologize for that. Your Honor, I understand the point that there was a reference to Christmas, but the bottom line is that it wasn't presented as a religious day. It was a comparison to a Christmas day, but it wasn't presented to Ms. Kroll as if it was a religious observance. I mean, don't we have, like, people who celebrate Christmas who are not Christians? We do, Your Honor. There are people, in fact, many people who use Christmas Day as an opportunity for goodwill and exchange of presents, notwithstanding a specific religious observance, but just as a day of a holiday. But I'd also, you know, I think it's important to point out, just kind of in the totality of circumstances, when the court examines the issues, Ms. McKenna waited until after the schedule came out to ask for this as a day off. And when you look at the totality of circumstances, when she testified that she knew that, or she testified that she knew the schedule for work came out two weeks before it would come out, and yet did nothing, said nothing to Ms. Kroll, waited until after it came out. And then she approached Ms. Kroll and said, this is a very important day for me personally. She did not specify the significance of it to her personally. And then, of course, we look at it from the perspective of whether this is examined as a disparate treatment issue, as is argued in the reply brief. The bottom line is they still have not identified a comparator, someone to demonstrate that there was another person treated disparately than Ms. McKenna. There's a reference to an employee named Kay. We have no indication that apparently an employee named Kay was given Christmas off, but we don't know how much time Ms. Kay, we don't know her last name, we don't know how long Kay was with Walmart, whether or not she had seniority, how long in advance of Christmas she asked for the day off. So there is simply no indication that Ms. McKenna did what she needed to do in order to demonstrate the significance of this day, either her EEOC charge or when she asked for this as a holiday, without presenting it as a basis to demonstrate that this was a matter of religious significance. I'll turn to the issue of hostile environment, unless there's any questions about that, Your Honors. With respect to the hostile environment claim, the standard is really well settled here. Ms. McKenna had to demonstrate that there was an unwelcome harassment based upon national origin, that it was severe or pervasive, and, of course, that Walmart is responsible for this. As the panel has noted, this was not about national origin. The issues that were raised had to do with communication. And Title VII, you know, there is case authority that says that language can be tied to national origin, but the bottom line is that here, the issues that Ms. McKenna identified did not arise out of references to national origin, at least at first, but what they were were based upon her inability. The language can be in the mix when it's coupled with other harassing conduct that clearly is linked to national origin. So it would suggest an inference that it all is, right? But if the only thing we're talking about is conduct about language, it doesn't count. I agree with that, and I agree that context is critical here. And I think the reason I say context is critical is because Ms. McKenna testified at the record at 32-2, pages 18 and 40, that she recognized that language skills and the ability to communicate with customers was an essential component of her job. When Ms. McKenna first applied to work at Walmart, she was originally going to be placed in an area where she did not have to communicate, but she requested to be in the apparel section, and so Walmart placed her there at her request. Unfortunately, she had difficulty communicating, and in the same case versus Florida A&M, this court did explain that where effective communication skills are reasonably related to job performance, an employee's difficulty with spoken English can establish that any employment action was nondiscriminatory. And that's why I said context matters, because here, even the identification by Ms. McKenna of those incidences that she testified to caused her stress, were tied to the fact that she was struggling to communicate with customers. This wasn't situations where there were separate, completely unrelated instances. I mean, her first complaint, as I understand it, is about customers, only customers. That's correct. Her manager says, you know, look, I'll try to accommodate you, but, you know, it's difficult right now. And then when she comes back later and complains about customers and coworkers, again, a language assertion is the problem. But she also references the word discrimination. It's not clear that she's making that in any reference to national origin. But in any event, Walmart, as I understand it, fixes the problem within a couple of days. That is correct. The first time that the reference to discrimination is made, you can see from an audio transcription that Ms. McKenna made, and has been made part of the record, when Ms. McKenna, with the help of her daughter, approached Mr. Bayard and said that she felt that this was discrimination. You can see, and you can tell because of the language of this transcribed testimony, that he immediately jumped to action, as Your Honor noted. He took it very seriously. He asked for the night shift and gets it. That's right. And he took it very seriously. He said, if this is discrimination, he wanted names. He wanted facts. He said, we need to investigate this. He asked what department this was coming from. Ms. McKenna said that she could not identify a single person, just said it was coming from everybody in a nondescript way. But you're absolutely right. Walmart, they took it seriously. This isn't a situation where Ms. McKenna was ignored. They took it very seriously. They immediately said, well, if you feel you're discriminated against, three days later she was transferred to the night shift. And contrary to what I heard from my opposing side, she was very happy on the night shift, three months without incident. She testified repeatedly that she was much happier there, that there were no issues there. And then when there was, I think she said there was maybe one or two, but, again, it was from nondescript. She doesn't identify who it was, but says she experienced some unpleasant interaction within the three months that she worked in the night shift. The last thing I'll get to is the issue of the retaliation claim. Yeah, well, that's the interaction where someone made a reference to the invasion of Ukraine, right? That is correct. That's not something that she communicated to the supervisors at Walmart. That is correct, Your Honor. In fact, she never mentioned that at all. She just decided that she was going to take some time off to think about the situation and never came back. Yeah. So the last thing, there's an indication in an argument in the brief, although I didn't hear much about it today, about retaliation and retaliatory conduct. You're going to give them an opportunity to respond to that? You know, Your Honor, unless there are questions about it, we'll rest on our brief. I think this is a very clear basis for affirmance. Yes, Judge Alo. And on the customers, if I remember correctly, when she made the initial complaint to the manager about the customers, the manager responded that customers were also rude to him. He did say that. He did. He did not understand and she did not communicate the fact that she felt discriminated against. And he did not take it that way. When she brought up her feeling of it being discrimination, as Judge Pryor, we already discussed, he immediately jumped to action and rectified the situation. Once again, unless there are any questions, we ask that this court affirm. Thank you. Thank you, Mr. Ryder. Ms. Jackson, two minutes. Your Honor, a few points on rebuttal. First, the standard for exhaustion is that a plaintiff's judicial complaint is limited only by the scope of a reasonable EEOC investigation. Thus, it makes sense to consider the EEOC guidelines and what they would consider in a reasonable investigation. The EEOC guidelines explicitly state that national origin and religious discrimination claims are often intertwined and direct their investigators to consider alternate theories of liability. Additionally, whether or not Christmas is sufficiently alerting Wal-Mart to the religious nature of her request is a question of fact for the fact finder. It should not be resolved on summary judgment. Furthermore... I mean, the exhaustion question, though, the district court has to look at the charge, or as you argue, the intake questionnaire, and make an evaluation of whether the administrative remedies were exhausted, right? Yes, Your Honor. But her references to Christmas and her beliefs and her need to adhere to her religious practices all suggest religious significance. She says New Year's Eve is, quote, one of the most important holidays for her as a Russian person. Yes, Your Honor. Right? Not as a Christian or in any way an Orthodox or anything like that, right? She does not explicitly state her religion, but she does note in her complaint and in her deposition that she has difficulty speaking about her religion because of her upbringing in the Soviet Union. Additionally, Mukina requested time off as soon as the schedule came out, and there is no indication in the record as to how soon or how much in advance a plaintiff must request time off under Wal-Mart's attendance policy. In fact, their attendance policy only requests that employers alert Wal-Mart one hour in advance if they are going to miss a shift. Additionally, Mukina need not have a comparator in order to survive under the Convincing Mosaic standard. Therefore, we request this court to reverse. Thank you. Well, thank you, Ms. Jackson. As always, we appreciate the clinic accepting the court appointment, and the University of Alabama does a great job of training young lawyers. Thank you.